IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDRE EDWARD HOLMES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL[1], Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | No. 15 C 8515<br><br>Magistrate Judge<br>Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Andre Holmes's ("Plaintiff") claims for disability insurance benefits ("DIB") and Social Security Income ("SSI") under Title II and Title XVI, respectively, of the Social Security Act (the "Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's memorandum, which this Court will construe as a motion for summary judgment, is granted in part and the Commissioner's cross-motion for summary judgment is denied.

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. Procedural History

Plaintiff filed his applications for DIB and SSI on June 11, 2012 alleging disability beginning June 11, 2012 due to numbness on the left side of his body, pain in his neck and back, a spinal injury, and a bulge in his cervical spine. (R. 277–83; 284–92.) The claim was initially denied on November 29, 2012 and upon reconsideration on April 5, 2013. (R. 132–33, 168–69.) After filing a written request for a hearing, Plaintiff appeared and testified on September 15, 2014 before Administrative Law Judge ("ALJ") B. Carlton Bailey, Jr. in Chicago, IL. (R. 39–103.) Plaintiff was represented by his attorney, Kathleen Flynn, via video. (*Id.*) Medical expert, Dr. Hilda Klein Martin M.D., appeared and testified. (*Id.*) A vocational expert, Edward Pajella was also present at the hearing but had to leave before giving testimony, so he provided answers to interrogatories provided by the ALJ at a later date. (*Id.*) At his hearing, Plaintiff amended his onset date to January 1, 2011. (R. 46.)

### II. ALJ Decision

On April 21, 2015, the ALJ issued a partially favorable written determination finding Plaintiff was not disabled prior to February 1, 2014, but became disabled on that date and continued to be disabled through the date of his decision. (R. 30.) Because Plaintiff's date last insured was June 30, 2013, prior to when the ALJ determined his disability began, the ALJ denied his DIB application. (*Id.*)

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2011, his alleged onset date. (R. 17.) At step two, the ALJ found that Plaintiff suffered from severe impairments of degenerative disc disease of the cervical spine and depression. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meet or medical equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. 18.)

Before step four, the ALJ found that prior to February 1, 2014, Plaintiff had the residual functional capacity ("RFC") to perform work at a medium exertional level, subject to several limitations.[2] Importantly, however, the ALJ found that

---

[2] As part of his RFC determination for the period prior to February 1, 2014 he ALJ also concluded that Plaintiff could:

> [N]ot climb ladders, ropes or scaffolds, or engage in crawling; he can occasionally stoop; he can frequently climb ramps or stairs, balance, crouch, or kneel; occasional overhead reaching with the left arm; frequent gross and fine manipulation with the left hand; he should avoid concentrated exposure to extreme cold for prolong period; he could not be at unprotected heights; he could not perform commercial driving; from a non-exertional standpoint, [Plaintiff] would be limited to simple, routine and repetitive tasks, performed in a work environment free of fast-paced production requirements; these tasks should involve only simple, work-related decisions, with few, if any work place changes; he should not interact with the public and have occasional interactions with co-workers and no tandem tasks; by that, I mean [Plaintiff's] work should not be directly dependent on what someone else does and someone else's work should not be directly dependent upon what [Plaintiff] does.

(R. 19–20.)

beginning February 1, 2014 Plaintiff retained the RFC to only perform work at a light exertional level.[3]

At step four, the ALJ concluded that Plaintiff had been unable to perform any of his past relevant work since January 1, 2011. (R. 28.) At step five, the ALJ determined that prior to February 1, 2014, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed such as a dishwasher, laundry worker, or packer. (R. 29.) Conversely, the ALJ determined that as of February 1, 2014 there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. 30.) Because of this determination, the ALJ found that Plaintiff had not been disabled prior to February 1, 2014 but that he became disabled on that date and continued to be disabled through the date of his decision. (*Id.*)

---

[3] For this portion of his RFC, the ALJ stated :

> [H]e would be limited to [ten] pounds for pushing and pulling; he could nt climb ladders, ropes or scaffolds, or engage in crawling; he can occasionally stoop; he can frequently balance, crouch, or kneel' occasional overhead reaching with the non-dominant, left arm; frequent gross manipulation and fingering meaning fine manipulation of items no smaller than the size of a paper clip, with the left land; he should avoid medium exposure to extreme cold for a prolonged period; he could not be at unprotected heights; he could not perform commercial driving; from a non-exertional standpoint, [Plaintiff] would be limited to simple, routine and repetitive tasks, performed in a work environment free of fast-paced production requirements; these tasks should involve only simple, work-related decisions, with few, if any work place changes; he should not interact with the public and have occasional interactions with co-workers and no tandem tasks; by that I mean [Plaintiff's] work should not be directly dependent on what someone else does and someone else's work should not be directly dependent upon what [Plaintiff] does.

(R. 26–27.)

# DISCUSSION

## III. ALJ Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer to any remaining question precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## IV. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") (internal citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [his] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning. . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

We review the ALJ's decision but we play an "extremely limited" role. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

V.   Analysis

Plaintiff alleges that the ALJ's decision should be remanded because: (1) he did not properly weigh the opinions of Plaintiff's physicians; (2) his finding regarding the February 1, 2014 onset date is unsupported by substantial evidence; and (3) he improperly evaluated Plaintiff's subjective symptom allegations.

**A. The ALJ improperly discounted Plaintiff's medical source opinion**

First, Plaintiff alleges that the ALJ did not provided sufficient rationale to justifying rejecting the opinions of state agency reviewing consultants Dr. Shakoora Omonuwa, M.D., and Dr. Miranda Hernandez, M.D. [Doc. No. 13, at 13].

7

On October 13, 2012, Dr. Omonuwa completed a physical RFC assessment form based on Plaintiff's medical evidence, where he found, among other things, that Plaintiff retained the ability to perform work at a light exertional level. (R. 111–12, 116.) These findings were confirmed by Dr. Hernandez on April 5, 2013. (R. 143–45.)

In his decision, the ALJ accorded "limited" weight to Drs. Omonuwa and Hernandez opinions because "the objective evidence of record failed to support a limitation to a range of the light exertional level prior to the established onset date." (R. 26.) This statement fails to assess the doctors' opinion in any meaningful way.

When evaluating the opinion of an acceptable medical source, the regulations require the ALJ to consider: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. *See* 20 C.F.R. § 404.1527(c). Here it is clear that the ALJ's single sentence according "limited" weight to both state agency consultants failed to take into account several of the factors required by the regulations. 20 C.F.R. § 404.1527(c). (noting that regardless of its source, an ALJ must "evaluate every medical opinion [he] receive[s]"); s*ee also* SSR 96-6p, at *2 (stating that, although ALJs are not bound by the findings of the state agency consultants, they "may not ignore these opinions and must explain the

8

weight given to the opinions in their decisions").[4] How the ALJ evaluated the state agency consultants' opinions is particularly important in the present case because Dr. Omonuwa concluded in 2012 that, at maximum, Plaintiff could sustain work at a light exertional level, which Dr. Hernandez affirmed in 2013. Yet, in his decision, the ALJ found that Plaintiff could perform work at a medium exertional level prior to February 1, 2014. The ALJ's limited analysis does not "allow the [Court] to trace his path of reasoning" to this conclusion at even at a minimal level. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

It appears that the ALJ partially based his finding off the testimony of the medical expert ("ME"), Dr. Hilda Martin, who disagreed with the state agency doctor's light exertional level assessment because the record did not contain the necessary objective evidence to "back . . . up" their opinions. (R. 90.) But Defendant does not point to, and the Court is not familiar with, any rule which alleviates the ALJ's duty to weigh the opinions of the state agency consultants when they are contradicted by an ME. 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive). Moreover, the ME's finding does not have any basis in the record. In particular, the ME claimed that the state agency consultants erroneously relied on the findings of examining physician, Dr. Darrell Murry, M.D., who determined Plaintiff could lift ten to fifteen pounds. (R. 563).

---

[4] SSR-96-6p was rescinded on March 27, 2017. *See* SSR 17-2p: *Titles II and XVI: Evidence Needed by Adjudicators at the Hearings and Appeals Council Levels of the Administrative Review Process To Make Findings About Medical Equivalence*, 82 Fed. Reg. 15263-02 (Mar. 27, 2017) (rescinding and replacing SSR 96-6p). Therefore, SSR 96-6p applied to the ALJ's April 21, 2015 decision. Even under 17-2p's guidance, ALJs are "not required to adopt prior administrative medical findings when issuing decisions," but they "must consider them and articulate how they considered them in the decision." SSR 17-2p, at *15265.

9

According to the ME, Dr. Murray's finding was likely based on Plaintiff's subjective reports rather than the Dr. Murray's own findings. (R. 90). But nowhere in his assessment does Dr. Murray indicate that his functional assessment was based on Plaintiff's representations. Accordingly, the Court must remand this matter so that the ALJ can build a logical bridge between the evidence and his conclusions.

As for Plaintiff's remaining arguments, the Court expresses no opinion but encourages the Commissioner to use all necessary efforts to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles*, 582 F.3d at 678 ("On remand, the ALJ should consider all the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994). The Commissioner should not assume that any other claimed errors not discussed in this Order have been adjudicated in her favor. On remand, the Commissioner therefore must carefully articulate her findings as to every step.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part and the Commissioner's cross-motion for summary judgment [Doc. No. 20] is denied. This matter is remanded for further proceedings consistent with this opinion.

SO ORDERED.	ENTERED:

*Maria Valdez*

DATE:   **July 19, 2018**	_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**